McGREGOR W. SCOTT
United States Attorney
CHRISTOPHER S. HALES
MIRIAM R. HINMAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

Nov 12, 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff
United States of America

## SEALED

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.   2:20-cr-0211-TLN |
|---|---|
| Plaintiff, | 18 U.S.C. § 1343 – Wire Fraud (25 counts); 18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1512(b)(2)(A) – Attempted Witness Tampering (3 counts); 18 U.S.C. § 1956(A)(1)(B)(I) – Concealment Money Laundering (2 counts); and 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) – Criminal Forfeiture |
| v. | |
| MATTHEW M. PIERCEY, | |
| Defendant. | |

## I N D I C T M E N T

COUNTS ONE THROUGH TWENTY-FIVE: [18 U.S.C. § 1343 – Wire Fraud]

MATTHEW M. PIERCEY,

defendant herein, as follows:

### I.      **INTRODUCTION**

At all times relevant to the Indictment:

1.      MATTHEW PIERCEY resided in or around the Redding, California, area starting in or about January 2016.  MATTHEW PIERCEY lived in the State of Illinois during parts of 2015.  MATTHEW PIERCEY sought to raise funds from investors and offered to provide financial advice.

2.      Kenneth Winton, charged elsewhere, resided in Chico and then Oroville, California.  At times, Kenneth Winton worked with MATTHEW PIERCEY to raise funds from investors and to

INDICTMENT

1

1  provide financial advice.

2       3.     Family Wealth Legacy LLC, Family Wealth Legacy Investments LP, and Family Wealth

3  Legacy Fixed Return Fund LLC relied on common leadership and operated in material respects as a

4  single entity, referred to herein as Family Wealth Legacy.  MATTHEW PIERCEY, Kenneth Winton,

5  and others used Family Wealth Legacy to solicit investors to make various investments, including fixed

6  return investments, investments in securities, investments through the purported use of algorithms,

7  cryptocurrency mining, and life insurance.  Family Wealth Legacy LLC was registered in Illinois and

8  Family Wealth Legacy Investments LP and Family Wealth Legacy Fixed Return Fund LLC were

9  registered in Delaware, but MATTHEW PIERCEY controlled and operated Family Wealth Legacy

10  primarily in the State and Eastern District of California.

11      4.     Zolla Financial LLC, Zolla High Yield Fund LLC, Zolla Government Insured Fund LLC,

12  and Zolla Realty Fund LLC relied on common leadership and operated in material respects as a single

13  entity, referred to herein as Zolla.  MATTHEW PIERCEY, Kenneth Winton, and others used Zolla to

14  raise investor funds through transactions that were typically styled as loans offering a fixed return, with

15  the company's returns purportedly generated primarily through algorithmic trading.  Each entity in Zolla

16  was registered in Delaware, but MATTHEW PIERCEY, Kenneth Winton, and others working with

17  them controlled and operated Zolla primarily in the State and Eastern District of California.

18      5.     The finances and management of Family Wealth Legacy and Zolla were intertwined,

19  including through the frequent transfer of funds between bank accounts belonging to Family Wealth

20  Legacy and bank accounts belonging to Zolla.  MATTHEW PIERCEY and others also encouraged some

21  investors to convert investments between Family Wealth Legacy and Zolla, and/or to invest in both

22  Family Wealth Legacy and Zolla.

23      6.     Company 3 was a medical business based in the Redding, California, area.  Company 3A

24  was an alternate name for Company 3 used by MATTHEW PIERCEY when soliciting certain

25  investments.  MATTHEW PIERCEY used Company 3 to raise investor funds that, among other things,

26  were sometimes transferred to bank accounts controlled by Family Wealth Legacy, and/or to make

27  payments to prior investors in Family Wealth Legacy and Zolla.  Individuals 2 and 3 controlled

28  Company 3.

## II.   SCHEME TO DEFRAUD

7.     Beginning in or about July 2015, and continuing until at least in or about August 2020, defendant MATTHEW PIERCEY, Kenneth Winton, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, promises, half-truths, and omissions, and the concealment of material facts.

8.     The purpose of the scheme was to obtain investor funds, and to lull investors and discourage them from requesting to withdraw funds, for purported investments including, but not limited to, fixed return investments, investments in securities, investments through the use of algorithms, life insurance, cryptocurrency mining, and investments in a healthcare business.

## III.   MANNER AND MEANS

In furtherance of the fraud, MATTHEW PIERCEY employed, among others, the following ways and means:

9.     MATTHEW PIERCEY created and caused to be created companies, including Family Wealth Legacy and Zolla, through which he and others working with him and at his direction and control offered various investment products.  MATTHEW PIERCEY also used an existing medical business run by others, Company 3, to offer investment products, and MATTHEW PIERCEY directed the use and disposition of investor funds that were sent to Company 3.

10.     MATTHEW PIERCEY, Kenneth Winton, and others working with them and at their direction and control made material false statements, half-truths, and omissions to investors to encourage them to invest, and also made material false statements, half-truths, and omissions to discourage investors from withdrawing their money.

11.     In some instances, MATTHEW PIERCEY, Kenneth Winton, and others working with them and at their direction and control induced investors to invest funds in the investors' individual retirement accounts (IRAs) through an administrator of self-directed IRAs, IRA Administrator A.  IRA Administrator A would then transfer those funds to a bank account controlled by Family Wealth Legacy, Zolla, or Company 3.

12.     MATTHEW PIERCEY initially recruited Kenneth Winton to be an investor in Family

3

1  Wealth Legacy.  Subsequently, MATTHEW PIERCEY recruited Winton to assist him with raising

2  money from investors for Family Wealth Legacy and Zolla.  Eventually, MATTHEW PIERCEY

3  recruited Winton to manage and later own Zolla.

4      13.    To obtain investor funds, MATTHEW PIERCEY and Kenneth Winton made and

5  arranged for others to make materially false and misleading statements, half-truths, and omissions,

6  including but not limited to statements, half-truths, and omissions about commissions and fees, how

7  invested funds would be used, where invested funds went, the success of investment strategies, the

8  nature and success of trading algorithms, the liquidity of investments, the financial stability of Family

9  Wealth Legacy and Zolla, the equity and assets of companies in Zolla including Zolla High Yield Fund

10  LLC, the reasons for directing investment funds to Company 3 and 3A, the nature of MATTHEW

11  PIERCEY's relationship and financial arrangement with Company 3 and 3A, and the nature of

12  Company 3 and 3A's relationship with Family Wealth Legacy and Zolla.  For example, from at least

13  2016, MATTHEW PIERCEY marketed something called the "Upvesting Fund" as an automated

14  algorithmic trading fund with a history of success and accepted money from numerous investors for

15  supposed investment in this fund.  However, MATTHEW PIERCEY admitted to an associate in October

16  2018, "Upvesting has not taken one penny.  We generically use the name Upvesting as a term referring

17  to an alternative to the traditional markets.  I now recognize this is probably sloppy and incorrect from a

18  compliance standpoint."  As another example, in some cases, MATTHEW PIERCEY and Kenneth

19  Winton informed investors, or arranged for investors to be informed, that Zolla High Yield Fund LLC

20  had equity-to-debt and equity-to-asset ratios of at least 20%, when MATTHEW PIERCEY and Kenneth

21  Winton knew that was false.

22      14.    Once investors had sent funds for investment, MATTHEW PIERCEY and Kenneth

23  Winton used investor funds or arranged for them to be used in ways that were contrary to what investors

24  had been told, including but not limited to, for commissions and fees, personal use, purchasing real

25  estate, expenses of Family Wealth Legacy and Zolla, investments other than algorithmic trading,

26  investments other than what investors had requested, lulling payments to other investors, payment to

27  Law Firm A, and cash withdrawals.  For example, in or about April 2016, MATTHEW PIERCEY

28  falsely told Investors 1 and 2 that their approximately $144,112 investment had been placed in an

1   insurance policy in the name of Family Wealth Legacy with Investor 1 and 2's trust as the beneficiary,

2   when in truth no such insurance policy existed and MATTHEW PIERCEY had spent over $19,000 of

3   Investor 1 and 2's investment on personal and/or business expenses before using the remainder of their

4   funds for other purposes.  As another example, in or about February 2017, MATTHEW PIERCEY

5   transferred nearly $700,000 of Investor 5 and 6's investment funds to a real estate investment in

6   Milwaukee that Investor 5 had rejected, after which MATTHEW PIERCEY falsely told Investors 5 and

7   6 that their approximately $700,000 had been deposited into a trading account in London, and emailed

8   Investor 5 a fabricated deposit receipt.  As another example, in or about April 2020, MATTHEW

9   PIERCEY caused approximately $185,472.01 of Investor 12 and 13's funds sent to Company 3 for

10   supposed investment to be transferred to Law Firm A.

11       15.     To lull investors and discourage them from requesting to withdraw funds, MATTHEW

12   PIERCEY and Kenneth Winton made and arranged for others to make materially false and misleading

13   statements, half-truths, and omissions to investors, including but not limited to statements, half-truths,

14   and omissions about: the current location, value, and nature of investments; the use of funds; the success

15   of investment strategies; the success of trading algorithms; the reasons for delays in payments to

16   investors; the ability to repay investors; the likelihood of Family Wealth Legacy and/or Zolla receiving a

17   substantial influx of funds in the near future, including through an acquisition or line of credit; and the

18   extent of Zolla High Yield Fund LLC's equity.  For example, MATTHEW PIERCEY and Kenneth

19   Winton provided or arranged for others to provide some investors account statements, and in some

20   instances a mobile phone application, that showed the purported value and categories of investments,

21   when MATTHEW PIERCEY knew that the alleged values and at least some of the categories listed

22   were false.  As another example, on or about March 31, 2020, MATTHEW PIERCEY indicated that

23   Investor 12's investment in Company 3 and 3A would be traded by algorithm using "Upvesting

24   software" and could be accessed "at any time," when in truth and in fact MATTHEW PIERCEY had

25   already caused the majority of Investor 12's investment to be dissipated, including through payments to

26   prior Family Wealth Legacy and Zolla investors.  As one example of material omissions, MATTHEW

27   PIERCEY and Kenneth Winton had a duty to disclose to investors that Zolla High Yield Fund LLC's

28   equity-to-debt ratio had fallen below 20%, yet MATTHEW PIERCEY and Kenneth Winton concealed

1 | this information from investors and failed to disclose it.

2 |      16.    It was further part of the scheme that MATTHEW PIERCEY, Kenneth Winton, and

3 | others working with them and at their direction and control continued to solicit additional money from

4 | existing investors using material false statements, half-truths, and omissions, including statements, half-

5 | truths, and omissions described in Paragraphs 13 through 15 above.  To further lull investors, discourage

6 | investors from requesting to withdraw funds, and in some cases convince investors to invest additional

7 | funds, MATTHEW PIERCEY and Kenneth Winton sometimes made payments or arranged for

8 | payments to be made to investors, including small payments described as loans or interest.

9 |      17.    In furtherance of the scheme, MATTHEW PIERCEY, Kenneth Winton, and others

10 | working at their direction and control communicated with investors, each other, and others through

11 | various means, including telephone calls, text messages, email messages, and in person.  Some of those

12 | communications involved interstate wires.  MATTHEW PIERCEY, Kenneth Winton, and others

13 | working at their direction and control also caused the use of wires, including interstate wires, to receive

14 | and transfer investor funds in furtherance of the scheme.

15 |      18.    In total, MATTHEW PIERCEY, Kenneth Winton, and others working at their direction

16 | and control raised at least approximately $35 million from investors through Family Wealth Legacy,

17 | Zolla, and funds routed through Company 3, and paid approximately $8.8 million to investors.  Of the

18 | remaining net investment of approximately $26 million, few if any liquid assets remain to repay

19 | investors.

20 |      19.    As a result of the scheme, MATTHEW PIERCEY and Kenneth Winton obtained

21 | substantial personal benefits, including but not limited to cash and purchased items.  Kenneth Winton

22 | obtained, among other things, approximately $1 million, some of which he used to purchase a

23 | houseboat.  MATTHEW PIERCEY used investor funds, among other things, to pay over $1.5 million on

24 | credit cards and business lines of credit that included various personal expenses, and over $1 million on

25 | the purchase and renovation of two residential properties in Northern California.

26 |           **IV.**     **USE OF THE INTERSTATE WIRES**

27 |      20.    On or about the dates listed below, for the purpose of executing the aforementioned

28 | scheme and artifice to defraud and attempting to do so, MATTHEW PIERCEY, as more specifically

charged below, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures and sounds:

| COUNT | ON OR ABOUT DATE | WIRE DESCRIPTION |
|---|---|---|
| 1 | April 8, 2016 | Wire signals associated with deposit of check #7547 for $144,112.00 from Investors 1 and 2 into Wells Fargo account ending #9597 |
| 2 | January 31, 2017 | ACH transfer of $695,157.23 from IRA Administrator A on behalf of Investors 5 and 6 to Wells Fargo account ending #4748 |
| 3 | April 20, 2017 | Wire transfer of $250,000.00 on behalf of Investor 4 to Wells Fargo account ending #9597 |
| 4 | May 2, 2017 | ACH transfer of $249,339.00 from IRA Administrator A on behalf of Investor 3 to Wells Fargo account ending #4748 |
| 5 | August 31, 2017 | ACH transfer of $133,000.00 from IRA Administrator A on behalf of Investor 29 to Wells Fargo account #4748 |
| 6 | January 16, 2018 | Wire signals associated with deposit of $250,000 check from Investor 7 into Wells Fargo account ending #7308 |
| 7 | March 27, 2018 | ACH transfer of $50,000 from IRA Administrator A on behalf of Investor 32 to Wells Fargo account ending #4748 |
| 8 | October 5, 2018 | Wire transfer of $600,000.00 from IRA Administrator A on behalf of Investor 7 to Wells Fargo account ending #4748 |
| 9 | October 10, 2018 | Wire transfer of $1,125,605.19 from IRA Administrator A on behalf of Investor 8 to Wells Fargo account ending #4748 |
| 10 | October 10, 2018 | Wire transfer of $350,000.00 from IRA Administrator A on behalf of Investor 9 to Wells Fargo account ending #4748 |
| 11 | October 11, 2018 | Email from Investor 9 to MATTHEW PIERCEY regarding investment |
| 12 | July 25, 2019 | Wire transfer of $172,589.29 from IRA Administrator A on behalf of Investor 11 to JP Morgan Chase account ending #1682 |

| 13 | July 26, 2019 | Wire transfer of $172,589.30 from Company 3 account ending #1682 to Wells Fargo account ending #7308 |
| 14 | August 15, 2019 | Wire transfer of $649,750.00 from IRA Administrator A on behalf of Investor 28 to JP Morgan Chase account ending #1682 |
| 15 | August 22, 2019 | Wire transfer of $200,000.00 from IRA Administrator A on behalf of Investor 31 to JP Morgan Chase account ending #5300 |
| 16 | August 30, 2019 | Wire transfer of $38,904.00 from Company 3 account ending #1682 to Wells Fargo account ending #7308 |
| 17 | December 17, 2019 | Wire transfer of $30,000.00 from Company 3 account ending #1682 to Wells Fargo account ending #7308 |
| 18 | January 29, 2020 | Wire transfer of $83,000.00 from Company 3 account ending #1682 to Wells Fargo account ending #7308 |
| 19 | March 12, 2020 | Email from MATTHEW PIERCEY to Investor 9 regarding Upvesting during economic crisis |
| 20 | March 12, 2020 | Email from MATTHEW PIERCEY to Investor 17 regarding Upvesting during economic crisis |
| 21 | March 12, 2020 | Email from MATTHEW PIERCEY to Investor 12 regarding Upvesting during economic crisis |
| 22 | March 23, 2020 | Wire transfer of $426,416.72 from IRA Administrator A on behalf of Investor 12 to JP Morgan Chase account ending #1682 |
| 23 | March 27, 2020 | Wire transfer of $113,600.00 from Company 3 account ending #1682 to Wells Fargo account ending #7308 |
| 24 | April 3, 2020 | Wire transfer of $348,550.07 from IRA Administrator A on behalf of Investor 13 to JP Morgan Chase account ending #1682 |
| 25 | April 7, 2020 | Wire transfer of $200,000 from Company 3 account ending #1682 to Citibank account of Law Firm A |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNT TWENTY-SIX: [18 U.S.C. § 1341 - Mail Fraud]

INDICTMENT

8

1    The Grand Jury further charges:

2                        MATTHEW M. PIERCEY,

3  defendant herein, as follows:

4         1.      The Grand Jury re-alleges and incorporates by reference all of the allegations set forth in

5  Paragraphs 1 through 19 of Counts One through Twenty-Five of this Indictment, as set forth above.

6         2.      On or about the date listed below, for the purpose of executing the aforementioned

7  scheme and artifice to defraud and attempting to do so, MATTHEW PIERCEY did knowingly cause to

8  be deposited, and did knowingly cause to be delivered, matter and things to be sent and delivered by a

9  private and commercial interstate carrier according to the directions thereon, as more specifically set

10 forth below:

| COUNT | ON OR ABOUT DATE | MAIL MATTER | SENDER |
|-------|------------------|-------------|--------|
| 26 | July 19, 2019 | Promissory note documents related to Company 3 sent via FedEx to IRA Administrator A in Florida | Individual 2 |

16 All in violation of Title 18, United States Code, Sections 2 and 1341.

17 COUNT TWENTY-SEVEN: [18 U.S.C. § 1512(b)(2)(A) – Witness Tampering]

18        The Grand Jury further charges: T H A T

19                        MATTHEW M. PIERCEY,

20 defendant herein, beginning in or about mid-March 2020, and continuing until at least on or about April

21 9, 2020, did knowingly attempt to corruptly persuade and engage in misleading conduct toward

22 Individuals 2 and 3, by seeking to dissuade Individuals 2 and 3 from responding to a grand jury

23 subpoena to Company 3 and making misleading statements regarding the grand jury subpoena and

24 investigation, with intent to cause and induce Individuals 2 and 3 to withhold a record, document, and

25 other object, from a federal grand jury sitting in the Eastern District of California, in violation of Title

26 18, United States Code, Section 1512(b)(2)(A).

27 ///

28 ///

1  COUNT TWENTY-EIGHT: [18 U.S.C. § 1512(b)(2)(A) – Witness Tampering]

2      The Grand Jury further charges: T H A T

3                        MATTHEW M. PIERCEY,

4  defendant herein, beginning in or about mid-March 2020, and continuing until at least on or about April

5  15, 2020, did knowingly attempt to corruptly persuade and engage in misleading conduct toward

6  Investor 14, by seeking to dissuade Investor 14 from responding to a grand jury subpoena and making

7  misleading statements about who would handle responding to the grand jury subpoena, with intent to

8  cause and induce Investor 14 to withhold a record, document, and other object, from a federal grand jury

9  sitting in the Eastern District of California, in violation of Title 18, United States Code, Section

10  1512(b)(2)(A).

11  COUNT TWENTY-NINE: [18 U.S.C. § 1512(b)(2)(A) – Witness Tampering]

12      The Grand Jury further charges: T H A T

13                        MATTHEW M. PIERCEY,

14  defendant herein, in or about late March 2020, did knowingly attempt to corruptly persuade and engage

15  in misleading conduct toward Investor 7, by stating that Investor 7 had the option to disregard a grand

16  jury subpoena, and by claiming that Investor 7 would be in breach of his arrangement with Family

17  Wealth Legacy to provide Family Wealth Legacy statements to a third party, with intent to cause and

18  induce Investor 7 to withhold a record, document, and other object, from a federal grand jury sitting in

19  the Eastern District of California, in violation of Title 18, United States Code, Section 1512(b)(2)(A).

20  COUNTS THIRTY AND THIRTY-ONE:  [18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money
21                                  Laundering]

22      The Grand Jury further charges:

23                        MATTHEW M. PIERCEY,

24  defendant herein, as follows:

25      1.      The Grand Jury re-alleges and incorporates by reference all of the allegations set forth in

26  Paragraphs 1 through 19 of Counts One through Twenty-Five of this Indictment, as set forth above.

27      2.      On or about the dates set forth below, in the State and Eastern District of California, and

28  elsewhere, defendant MATTHEW PIERCEY did knowingly conduct financial transactions affecting

1  interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit:

2  Mail Fraud, in violation of Title 18, United States Code, Section 1341, and Wire Fraud, in violation of

3  Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in

4  part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such

5  specified unlawful activity, and knowing the property involved in the financial transactions represented

6  the proceeds of some form of unlawful activity:

| COUNT | ON OR ABOUT DATE | MONETARY TRANSACTION |
|---|---|---|
| 30 | 8/23/2019 | Cash withdrawal of $50,000.00 from Company 3 account at JP Morgan Chase ending #1682 |
| 31 | 4/3/2020 | Cash withdrawal of $50,000.00 from Company 3 account at JP Morgan Chase ending #1682 |

13  All in violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

15  <u>FORFEITURE ALLEGATION</u>:  [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) – Criminal Forfeiture]

17  1.  Upon conviction of one or more of the offenses alleged in Counts One through Twenty-Nine of this Indictment, defendant MATTHEW M. PIERCEY shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

21  a.  A sum of money equal to the total amount of proceeds traceable to such offenses, for which defendant is convicted.

23  2.  Upon conviction of one or more of the offenses alleged in Counts Thirty and Thirty-One of this Indictment, defendant MATTHEW M. PIERCEY shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to the following:

27  a.  A sum of money equal to the amount of money involved in the offenses, for which defendant is convicted.

INDICTMENT                                        11

3.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One

through Thirty-One of this Indictment, for which defendant is convicted:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without

         difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c),

incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value

of the property subject to forfeiture.

                                       A TRUE BILL.

                                 **Signature on file w/AUSA**

                                 FOREPERSON

McGREGOR W. SCOTT
United States Attorney

INDICTMENT

12

*No.* 2:20-cr-0211-TLN _ _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA

*vs.*

MATTHEW M. PIERCEY

## I N D I C T M E N T

**VIOLATION(S):**   18 U.S.C. § 1343 – Wire Fraud (25 counts);
18 U.S.C. § 1341 – Mail Fraud;
18 U.S.C. § 1512(b)(2)(A) – Attempted Witness Tampering (3 counts);
18 U.S.C. § 1956(A)(1)(B)(i) – Concealment Money Laundering (2 counts);
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) - Criminal Forfeiture

*A true bill,*    **/s/ Signature on file w/AUSA.**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* 12th _ _ _ _ _ _ _ _ _ _ *day*

*of* November _ _ _ _ _ _ _ , *A.D. 20* 20 _ _ _ _

/s/ Alexandra Waldrop
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

*Bail, $* **No Bail Warrant Pending Hearing**
_ _ _ _ _ _ _ _ _ _

Kendall J. Newman, United States Magistrate Judge

GPO 863 525

2:20-cr-0211-TLN

## United States v. Matthew M. Piercey
### Penalties for Indictment

**Defendant**
**MATTHEW M. PIERCEY**

## COUNTS 1-25:

VIOLATION:      18 U.S.C. § 1343 – Wire Fraud

PENALTIES:      Up to 20 years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to 3 years
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## COUNT 26:

VIOLATION:      18 U.S.C. § 1341 – Mail Fraud

PENALTIES:      Up to 20 years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to 3 years
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## COUNTS 27-29:

VIOLATION:      18 U.S.C. § 1512(b)(2)(A) – Witness Tampering

PENALTIES:      Up to 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## COUNTS 30-31:

VIOLATION:      18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering

38

PENALTIES:  Up to 20 years in prison; or
      Fine of up to $500,000 or twice the value of the property involved,
      whichever is greater; or both fine and imprisonment
      Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## **FORFEITURE ALLEGATION:**

VIOLATION:  18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1)
      – Criminal Forfeiture

PENALTIES:  As stated in the charging document

39